Commonwealth ex rel. Roviello, Appellant, *v.*
Roviello, Appellant.

430

Argued March 19, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Russell E. Ellis,* with him *Fox, Differ, Callahan & Ulrich,* for relatrix.

*Robert E. Gabriel,* with him *John Rogers Carroll,* and *Carroll and Gabriel,* for defendant.

OPINION BY PRICE, J., June 21, 1974:

These appeals arise from a sentence of contempt imposed by the Court of Common Pleas of Montgomery County on September 25, 1973, on the husband, Francis Roviello, and the refusal of the court to reinstate a support order in favor of the wife, Carmella Roviello. Both appeals are a result of a support action instituted by the wife, for herself and minor daughter.

On March 30, 1973, the wife filed an original action for support in Montgomery County at a time when the parties were living together, having been married for 29 years. On May 14, 1973, the court entered a temporary order against the husband, in the amount of $90.00 per week in favor of the minor daughter. On June 29, 1973, a further hearing was held at which time the court entered an additional temporary order against the husband for $60.00 per week and use of an automobile in favor of the wife.

On July 27, 1973, a further hearing was held at which time the husband orally agreed to convey his interests in the premises and an automobile to the wife, and to pay the wife's reasonable counsel fees. The property settlement was to be reduced to writing and be conditioned upon the wife securing an uncontested divorce. At the conclusion of the hearing, the court ordered the continuation of the previous $90.00 per week order for the child, and, in addition, revoked the previous order for $60.00 per week for the wife, and in its place substituted the terms of the proposed property settlement. An undated property settlement agreement encompassing the details of the July 27, 1973, order, including the transfer of additional items of personalty to the wife, all predicated upon the wife seeking a divorce within 6 months, was signed by the parties. Soon thereafter disputes arose between the parties with respect to the rights and obligations under the executed agreement.

On September 25, 1973, a hearing was held pursuant to a petition filed by the wife requesting reinstatement of the June 29, 1973, order and the finding of the husband in contempt for violation of the July 27, 1973, order, because he had not yet completed the property transfer as ordered. The court refused to honor the signed property settlement agreement, and held appellant in contempt for his refusal to comply

with the required property transfer of the July 27, 1973, order. The court did not reinstate the order of June 29, 1973, in favor of the wife. The husband was jailed for seven days at the Montgomery County Prison and released upon the grant of a supersedeas by this court.

In appeal No. 1917, the appellant-husband argues that the lower court erred in sentencing him to jail, because at no time was he in violation of a valid court order because the lower court was without authority to compel him to agree to a property settlement at a support hearing. We agree with the husband's contentions and reverse the contempt order of September 25, 1973.

In appeal No. 1956, the appellant-wife contends that the court abused its discretion by revoking the June 29, 1973, order for $60.00 per week for support of the wife because no facts were alleged by the husband showing a permanent change in circumstances justifying the revocation. We agree with the wife's contentions and reinstate the order of June 29, 1973, retroactive to its date.

## I.

Appellant-husband, in appeal No. 1917, appeals his conviction for contempt for failure to carry out the terms of the order of July 27, 1973. The contempt citation arose out of the husband's refusal to convey jointly-owned property to his appellee-wife as ordered by the lower court. At the July 27, 1973, hearing, the parties agreed upon a property settlement agreement, which was reduced to writing, signed by the parties, only to be later repudiated by both the husband and the wife. By the terms of the agreement, the wife was to gain sole interest in jointly-held property

upon the filing for an absolute divorce.[1] Upon the failure of the wife to file for divorce, the husband, who had already lodged the deed to the family premises with a lawyer, refused to convey the property.

The lower court, in an attempt to reach an amicable settlement between the parties, included the terms of the property settlement agreement in its order of support of July 27, 1973.[2] At the same time, the court

---

[1] The property settlement agreement in paragraph IV provides in pertinent part: "Simultaneously with the execution of this Agreement, Wife and Husband shall execute a Deed to premises 213 Winding Way, Merion Station, Lower Merion Township, Montgomery County, Pennsylvania, conveying said premises to Wife alone, said conveyance to be free of all liens, judgments and encumbrances, with the exception of a certain existing first mortgage in the approximate unamortized principal amount of Seven Thousand ($7,000.00) Dollars. The Deed shall be held by Russell E. Ellis, Esquire, as Escrow Agent, without recording. Should a Decree in Absolute Divorce be entered by a Court having jurisdiction over the parties and this marriage during the term of this Agreement, the Escrow Agent shall deliver the said deed to Wife. Should a Decree in Absolute Divorce not be so entered during the term of this Agreement, the Escrow Agent shall return the Deed to Husband."

[2] The court at the hearing of July 27, 1973, ordered the following: "THE COURT: The terms are that you will pay ninety dollars a week for the support of your minor child, Cindy, that you will deed over the house to your wife, Carmella, that you will take out of the house only a bedroom set, and two chairs, and that she will get an automobile and that you will pay whatever your Counsel has agreed on as reasonable Counsel fees, whatever it is, that has been agreed upon. . . . THE COURT: And now this 27th day of July, 1973, the Order of June 29, 1973 is hereby revoked and in place thereof by agreement of the parties in open Court. . . . THE COURT: You, Francis Anthony Roviello are ordered and directed to pay the sum of ninety dollars a week for the support of your minor Child, Cindy, to the Chief Desertion Officer, that you convey the real estate at 213 Winding Way, Merion, to your wife, Carmella Roviello, subject to the mortgage now existing, that you pay reasonable Counsel fees as approved by your Counsel, Judge Quinlan, to Mr. Ellis, that you remove from the house only a

revoked a previous order of $60.00 per week in favor of the wife. When the husband refused to convey the property described in the property settlement agreement, the court held the husband in violation of its order of July 27, 1973, and in contempt of court. In his appeal, the husband contends that he was not in contempt of the order of July 27, 1973, because the oral agreement between the parties to convey jointly-owned property, made in open court, was not the proper subject of a support order.

In our consideration of this issue, we are not concerned with the validity of the written agreement between the parties. The proper determination of the status of this document is in an action for specific performance before a court of equity.[3] *See Commonwealth ex rel. Rossi v. Rossi,* 161 Pa. Superior Ct. 86, 53 A. 2d 887 (1947). However, we are concerned with whether a court in an action for support has the power to force the parties to accept essentially the same terms of the property settlement agreement when it is in the form of an order of the court. Thus, in determining whether the lower court erroneously committed the

---

bedroom suite and two chairs and leaving all other glassware and the rest of the property for your wife, Carmella Roviello, and that you convey, transfer the automobile, which one is it? MR. QUINLAN: 1967 Cadillac car. THE COURT: To Carmella and you enter into your own bond of five hundred dollars, pay the costs of prosecution and you are released in the custody of your Counsel, Judge Quinlan in compliance with the Court Order." [NT 6]

[3] In determining the legality of such an agreement, it will be upheld only if not directly conducive to the procurement of a divorce. *See Miller v. Miller,* 284 Pa. 414, 131 A. 236 (1925). It must also be noted that contracts between husband and wife, if fairly made, are generally considered binding as to them, *Miller v. Miller, supra; Hall v. Hall,* 97 Pa. Superior Ct. 429 (1929), although legally ineffective to oust the jurisdiction of the court in an action brought for the support of the wife. *Commonwealth v. Richards,* 126 Pa. Superior Ct. 517, 191 A. 634 (1937).

husband to jail for contempt for failure to obey an order promulgated by the court in a support proceeding, it must first be ascertained whether the court had the power to fashion such an order.

The lower court is statutorily granted the power to ". . . order the [husband] . . . to pay such sum as said court shall think reasonable and proper for the comfortable support and maintenance of the said wife or children, or both. . . ." Act of December 6, 1972, P. L. 1482, No. 334, §1 (18 Pa. C.S. §4322(b)). This statutory discretion has been further clarified by a voluminous body of case law. It is a well-settled maxim of Pennsylvania jurisprudence that a husband has the duty to contribute to the support of his wife, *Commonwealth ex rel. Volinski v. Volinski,* 180 Pa. Superior Ct. 348, 119 A. 2d 648 (1956), and the duty continues until the husband can prove with clear and convincing evidence that the wife's conduct relieves him from this responsibility. *Commonwealth ex rel. Korn v. Korn,* 204 Pa. Superior Ct. 153, 203 A. 2d 341 (1964); *Commonwealth ex rel. Reddick v. Reddick,* 198 Pa. Superior Ct. 111, 181 A. 2d 896 (1962). The husband's duty of support is imposed by law as an incident of the marital status and the legal unity of husband and wife, *Commonwealth v. Berfield,* 160 Pa. Superior Ct. 438, 51 A. 2d 523 (1947) (cases cited therein), and has long been considered by the state as a "paramount" obligation.

The purpose of a support order is to determine an allowance which is reasonable and proper for the comfortable support and maintenance of the wife, *Commonwealth ex rel. Rankin v. Rankin,* 170 Pa. Superior Ct. 570, 87 A. 2d 799 (1952); *Commonwealth ex rel. Milne v. Milne,* 150 Pa. Superior Ct. 606, 29 A. 2d 228 (1942), and is based upon the property, income, and earning capacity of the husband and the family's station in life. *Commonwealth ex rel. Fryling v. Fry-*

*ling,* 220 Pa. Superior Ct. 68, 283 A. 2d 726 (1971) ; *Commonwealth ex rel. Ross v. Ross,* 206 Pa. Superior Ct. 429, 213 A. 2d 135 (1965) ; *Commonwealth ex rel. Whitney v. Whitney,* 160 Pa. Superior Ct. 224, 50 A. 2d 732 (1947).

However, a support order may not be set at such an amount as to serve as a punishment of the husband for misconduct, *Commonwealth ex rel. Milne v. Milne, supra,* or as a confiscation of the husband's property. *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer,* 226 Pa. Superior Ct. 301, 310 A. 2d 672 (1973). And although the court has the power and duty to look beyond the actual earnings of the husband and may consider his earning power and nature and extent of his property and other financial resources, *Commonwealth ex rel. Gitman v. Gitman,* 428 Pa. 387, 237 A. 2d 181 (1968) ; *Commonwealth ex rel. McNulty v. McNulty,* 226 Pa. Superior Ct. 247, 311 A. 2d 701 (1973), a support action may not serve as an action to divide or distribute the husband's estate. This court has often noted that a proceeding for support cannot be used for the purpose of securing a wife's share of her husband's estate or for the purpose of recovering property to which she might otherwise be entitled. Thus, a court is without jurisdiction in a support action to direct an accounting of funds in which the wife has an interest, *Commonwealth v. Gleason,* 166 Pa. Superior Ct. 506, 72 A. 2d 595 (1950), to distribute the father's estate. *Hecht v. Hecht,* 189 Pa. Superior Ct. 276, 150 A. 2d 139 (1959), or to divide the husband's estate. *Commonwealth v. Gleason, supra; Commonwealth v. Elliott,* 157 Pa. Superior Ct. 619, 43 A. 2d 630 (1945) ; *Commonwealth ex rel. Milne v. Milne, supra; Commonwealth v. Widmeyer,* 149 Pa. Superior Ct. 91, 26 A. 2d 125 (1942) ; *Commonwealth ex rel. v. Sherritt,* 83 Pa. Superior Ct. 301 (1924).

In reviewing the record in light of these restrictions, we find the July 27, 1973, order, directing the division of jointly-owned property, to be beyond the scope of inquiry of a court in a support action. The court, in its attempt to settle the dispute between husband and wife, ordered the husband to transfer his interests in jointly-owned property to the wife. In effect, the July 27, 1973, order directs the division and disposition of the husband's property, an action not available to the discretion of the support court.[4] *Commonwealth v. Elliott, supra; Commonwealth ex rel. Milne v. Milne, supra.*

The fact that the parties agreed in open court to a property settlement agreement, the terms of which were incorporated into the July 27, 1973, order, does not affect our determination that such an order was not the prerogative of the court. The oral consent, and later written contract, may be binding as to the parties;[5] however, the consent does not grant the court the power to direct the parties to carry out the ordered transfer of property. *Cf. Commonwealth ex rel. Rossi v. Rossi, supra.*

The substance of the July 27, 1973, order is beyond the scope of the lower court in the present proceeding, and would be properly before the court only after a final decree or order has been reached, i.e., decree of divorce. We, therefore, find the order of July 27, 1973, to be void.[6]

---

[4] However, the court is authorized in an action initiated by an abandoned wife to reach a husband's property by directing its seizure, sale or mortgage in order to provide for the maintenance of his wife and children. Act of December 6, 1972, P. L. 1482, No. 334, §1 (18 Pa. C.S. §4322(d)). *See Drummond v. Drummond,* 402 Pa. 534, 167 A. 2d 287 (1961) (cases cited therein).

[5] This adjudication is now pending in the lower court by an equity action for specific performance.

[6] *See* Act of May 10, 1927, P. L. 884, §1, *as amended,* Act of May 17, 1949, P. L. 1394, §1 (68 P.S. §501).

Turning now to an examination of the contempt conviction of the appellant-husband for refusing to obey the provisions of the July 27, 1973, order, it is necessary to determine whether the lower court could cite appellant for contempt, despite the fact that the court's order was outside its authorized power.

The courts of Pennsylvania have always possessed the inherent power to enforce orders and decrees by imposing penalties and sanctions for failure to obey or comply therewith. *Brocker v. Brocker,* 429 Pa. 513, 241 A. 2d 336 (1968); *Commonwealth ex rel. Beghian v. Beghian,* 408 Pa. 408, 184 A. 2d 270 (1962); *Knaus v. Knaus,* 387 Pa. 370, 127 A. 2d 669 (1956); *Penn Anthracite Mining Co. v. Anthracite Miners of Pennsylvania,* 114 Pa. Superior Ct. 7, 174 A. 11 (1934). It is also statutorily provided that a husband may be imprisoned by a Court of Common Pleas for failure to comply with a support order. Act of May 24, 1917, P. L. 268, §1, *as amended,* July 3, 1957, P. L. 446, §1 (19 P.S. §1151); Act of December 6, 1972, P. L. 1482, No. 334, §1 (18 Pa. C.S. §4322(b)).

The basis for contempt is to provide punishment for contemptuous disregard of a court's authority. *Commonwealth ex rel. Litz v. Litz,* 190 Pa. Superior Ct. 310, 154 A. 2d 420 (1959); *Commonwealth v. Peters,* 178 Pa. Superior Ct. 82, 113 A. 2d 327 (1955). This power is a necessity so that a court may insure compliance with its decrees, and without such power, a decree would in many cases be useless. *Philadelphia Marine Trade Association v. International Longshoremen's Association,* 392 Pa. 500, 140 A. 2d 814 (1958); *Williamson's Case,* 26 Pa. 9, 18 (1855) ("All courts have [contempt] power . . . otherwise they could not protect themselves from insult, or enforce obedience to their process.")

However, the court's power to punish for contempt is limited to situations in which it has both the juris-

diction and the power or authority to render the particular decree or order. *In re Schlesinger,* 367 Pa. 476, 81 A. 2d 316 (1951); *Schofield Discipline Case,* 362 Pa. 201, 66 A. 2d 675 (1949); *Commonwealth ex rel. Sage v. Sage,* 160 Pa. 399, 28 A. 863 (1894); *Commonwealth ex rel. v. Perkins,* 124 Pa. 36, 16 A. 525 (1889); *Rose Child Dependency Case,* 161 Pa. Superior Ct. 204, 54 A. 2d 297 (1947); *In re Rossiter,* 84 Pa. Superior Ct. 193 (1924); *Commonwealth v. Heenerfauth,* 70 Pa. Superior Ct. 527 (1918); *Commonwealth ex rel. v. MacArthur,* 62 Pa. Superior Ct. 535 (1916).

In those instances where a court enters an order without authority or legal right to make such an order, it is powerless to attempt its enforcement. *Commonwealth v. Heenerfauth, supra.* And when a court has jurisdiction of the action and makes an order, but the order is beyond its powers, it is a nullity. The disregarding of an order in excess of the court's authority does not give rise to contemptuous conduct by the parties involved. *Commonwealth ex rel. Sage v. Sage, supra; Rose Child Dependency Case, supra. But see Williamson Case, supra.* (In case of writ of jurisdiction, court may punish for contempt for disobedience of its order, at least until the determination of the jurisdiction question.)

In applying these principles to the present appeal, and keeping in mind that we have found the lower court without power to order a property settlement in a support proceeding, appellant's conviction for contempt cannot stand. The court in this instance has transcended its authority and may not require compliance with the July 27, 1973, order by virtue of its power to punish for contempt. *Commonweatlh ex rel. Sage v. Sage, supra.* Therefore, we reverse the contempt order of September 25, 1973.

## II.

In appeal No. 1956, appellant-wife alleges that the lower court committed an abuse of discretion by refusing to reinstate the order of June 29, 1973, for $60.00 per week, against appellee-husband. This allegation is predicated upon the contention that the June 29, 1973, order was revoked despite the lack of showing of a change of circumstances or loss of wife's entitlement by the husband. We agree with the wife's contentions and reinstate the order of June 29, 1973.

An order for $60.00 per week was granted in favor of the wife at the June 29, 1973, hearing. This order was later revoked on July 27, 1973, when the parties agreed to a property settlement agreement, and which agreement was thus incorporated into an order promulgated by the court. The terms of the agreement were reached by the parties after testimony regarding the property rights of the parties and in anticipation that a divorce would be promptly secured. The agreement provided that following the settlement of property rights, the previous order for $60.00 per week for the wife would be revoked and the husband would continue to pay the $90.00 per week in favor of the minor daughter.[7] The property agreement subsequently

---

[7] The colloquy between the parties and the court at the hearing of July 27, 1973, indicates that all parties clearly understood that wife appellant would be taken off the order: "MR. ELLIS: One moment, your Honor, there is a temporary order. MR. QUINLAN: For $150.00. THE COURT: That would be revoked. . . . THE COURT: I will revoke that previous order, this is the settlement for everything, if you don't want it say so. . . . THE COURT: Obviously, if this is the settlement it covers everything, it doesn't carry the hundred and fifty dollars a week because that wouldn't be a settlement. MR. ELLIS: It is agreed, all right. . . . THE COURT: The terms are that you will pay ninety dollars a week for the support of your minor child, Cindy, that you will deed over the house to your wife, Carmella, that you will take out of the house only a bedroom set,

signed by the parties also provided that the wife would not seek any future increase in the support order for the child.[8]

On September 25, 1973, the court, after a hearing on the wife's petition requesting in part the reinstatement of the previous support order for herself, refused to reinstate the June 29, 1973, order.[9]

Orders of support are not final and may be increased or decreased where the financial condition of the parties changes. *Commonwealth ex rel. Kaplan v. Kaplan*, 219 Pa. Superior Ct. 163, 280 A. 2d 456 (1971); *Commonwealth ex rel. Meth v. Meth*, 188 Pa. Superior Ct. 553, 149 A. 2d 488 (1959). And it is the burden of the party seeking to modify a support order to show by competent evidence such a change of cir-

and two chairs, and that she will get an automobile and that you will pay whatever your Counsel has agreed on as reasonable Counsel fees, whatever it is, that has been agreed upon, now, is that it, and you understand, Mrs. Roviello, this covers everything. You have no right to come back on him for education or anything else, you carry your daughter all the way through, do you understand? MRS. ROVIELLO: I understand. THE COURT: He will pay $90.00 a week and you get the house." [NT 5]

[8] The property settlement agreement in paragraph III, provides in pertinent part: ". . . Wife agrees not to seek an increase in the support order and agrees that the $90.00 per week is all inclusive, i.e., food, clothing, housing, medical, dental, and all educational and vacation expenses."

[9] The lower court in its opinion, noted that the court did not err in not reinstating the order of June 29, 1973, because "[t]he defendant refused in open Court to comply with the Order of July 27, 1973. He further informed his counsel that he would refuse to comply with a reinstatement of the temporary order of June 29, 1973. We could not and would not substitute the June 29, 1973 order for the July 27, 1973 order which the defendant refuses to obey, and reinstate the temporary order of June 29, 1973 which defendant's counsel informed the Court the defendant would also refuse to obey. We neither have the time nor the will to participate in an exercise of futility which would occur if we granted the defendant's request."

cumstances as will justify a modification. *Commonwealth ex rel. Brennan v. Brennan,* 202 Pa. Superior Ct. 255, 195 A. 2d 150 (1963); *Commonwealth ex rel. Bassion v. Bassion,* 199 Pa. Superior Ct. 541, 185 A. 2d 822 (1962). In proceedings of this nature, we will not interfere with the determinations of the court below unless there has been a clear abuse of discretion. *Commonwealth ex rel. Kreiner v. Scheidt,* 183 Pa. Superior Ct. 277, 131 A. 2d 147 (1957).

In the instant appeal, we find that the lower court abused its discretion by the revocation of the June 29, 1973, order. The June 29, 1973, order was revoked by the court following an agreement by the parties to a property settlement in open court. The revocation resulted after the presentation of testimony regarding the property rights of the parties; however, there was no evidence on the issue of support and the revocation was ordered without any petition, motion or other affirmative action instituted by either party. The acquiescence of the wife to the revocation of the June 29, 1973, order was apparently based on the reliance of the terms of the court-ordered property settlement, an action which we have already found the court without power to issue. Thus, because we have found the court-ordered property agreement of July 27, 1973, to be a nullity, we must also find the revocation of the June 29, 1973, support order void since its revocation was grounded upon the court's ability to order the settlement of property.[10]

---

[10] The husband argues that the wife cannot appeal from the refusal to reinstate an order of support which she agreed to on July 27, 1973, because no appeal had been timely filed from that order. He further argues that the failure of the wife to appeal the July 27, 1973, order, and to wait for almost two months to seek reinstatement of the court's earlier June 29, 1973, order through the use of a Petition for Contempt, is, in itself, a sufficient basis for the court to refuse to entertain this appeal. Because of our finding

The finding that the order of July 27, 1973, is void, necessitates that the June 29, 1973, support order of $60.00 per week for the wife be reinstated and continued because there has been no showing of a material change in circumstances since its inception that would authorize its modification or revocation. *Commonwealth ex rel. Naselsky v. Naselsky,* 199 Pa. Superior Ct. 270, 184 A. 2d 288 (1962) ; *Commonwealth ex rel. Crandall v. Crandall,* 145 Pa. Superior Ct. 359, 21 A. 2d 236 (1941).

That portion of the July 27, 1973, order, revoking the support provisions for the wife is reversed, and the order of June 29, 1973, providing for $60.00 per week support for the wife is reinstated, retroactive to July 27, 1973.

In appeal No. 1917, October Term, 1973, the contempt order dated September 25, 1973, is reversed.

---

that the order of July 27, 1973, is void and that the wife need not suffer for relying on the order promulgated by the court, the wife brought the action for reinstatement at an appropriate time. This appeal is not an attempt to bring out for review the court's discretion in making the order of June 29, 1973, but rather the wife requested the court to reconsider its revocation, without consideration of evidence of the required changed circumstances, of the June 29, 1973, support order. *See Commonwealth ex rel. Meth v. Meth,* 188 Pa. Superior Ct. 553, 149 A. 2d 488 (1959).